IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRUCE C. HAYDEN, <br><br> *Relator,* <br><br> v. <br><br> ROBERT G. GRAW, JR., M.D., *et al.,* <br><br> *Defendants*. | Civil No. ELH-14-2379 |

**MEMORANDUM**

Plaintiff Bruce C. Hayden ("Relator") filed a *qui tam* Complaint on July 28, 2014, pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3728 *et seq*, and the Maryland False Health Claims Act, Md. Code (2023 Repl. Vol., 2024 Supp.), §§ 2-601 *et seq* of the Health-General ("H.G."). ECF 1.[1]  In the Complaint, Relator names as defendants several individuals as well as numerous businesses that provide medical services.  This Memorandum addresses "Plaintiff's Motion For Alternative Service, or, in the Alternative, Extension of Time To Serve Certain Defendants with Process and for Leave To Take Discovery Concerning the Address of Defendant Robert G. Graw, M.D., and Incorporated Memorandum In Support", filed on November 17, 2025.  ECF 93 (the "Motion").

The individual defendants are Robert G. Graw, Jr., M.D.; Stanford Joseph Coleman, Jr., M.D., M.B.A.; Marc E. Weber, M.D.; Jon W. Gonella, P.A., a physician's assistant; and Kimberly Bresnahan, Chief Operating Officer of certain defendants. *Id.* at 2–3.  The corporate defendants

---

[1] This case was initially assigned to Judge J. Frederick Motz.  It was reassigned to me on August 7, 2018, due to the retirement of Judge Motz.  *See* Docket.

are Harcart Health Holdings, LLC ("HHH"); Family Urgent Care, LLC ("FUC"); Cedar Health Ventures, LLC ("CHV"); the Pediatric Group, LLP (collectively, the "Entity Defendants"); the Pediatric Group And Families Too!, LLC; Pediatric Specialists of Annapolis, LLP; and Ancillary Services, LLP. *Id.* at 3. Plaintiff has informed the Court that CHV has "merged into" HHH and that HHH is now "responsible" for CHV's "liabilities." ECF 88.

The Court granted numerous requests from the United States for extensions of time to determine whether to intervene in this case. S*ee* ECF 2 to ECF 67. On June 30, 2025, the United States gave notice that it declined to intervene. ECF 68. By Order of the same date, I directed the Clerk to lift the seal as to the Complaint; the Order; the Notice of the government, declining to intervene; and future filings, and directed the Relator to serve the Complaint, as set forth in 31 U.S.C. § 3730(b)(3). ECF 69; *see Am. C.L. Union v. Holder,* 673 F.3d 245, 251 (4th Cir. 2011) ("If the United States declines to intervene, it notifies the court and the qui tam relator. The complaint is then unsealed, the docket is unsealed, and the qui tam relator serves the complaint on the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure."); *see also Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 932 (10th Cir. 2005) ("After the Government . . . declines to intervene, the complaint is unsealed and served on the defendant.")

On July 8, 2025, the State of Maryland also declined to intervene and sought to dismiss all claims filed on behalf of the State. ECF 70. I granted the State's request and dismissed "all claims asserted on behalf of the State of Maryland . . . without prejudice." ECF 71.

Under 31 U.S.C. § 3730(c)(3), "[i]f the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action." *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005) ("If the

2

government declines to intervene, the *qui tam* plaintiff may serve the complaint on the defendant and proceed with the action on its own.")  The Relator is pursuing the case.

Fed. R. Civ. P. 4(m) applies to FCA cases.  *See Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 251 (4th Cir. 2011).  Ordinarily, Rule 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed[.]"  Under Rule 4(m), if any defendant is not served within the requisite time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  However, because qui tam cases initially are filed under seal, "the 90-day [service] clock does not start until the court unseals the complaint and orders service."  *United States ex rel. Moore v. Cardinal Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *6 (D. Md. Mar. 28, 2017); *see* 31 U.S.C. § 3730(b)(3) ("The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.")

Here, as noted, by Order on June 30, 2025, I ordered plaintiff to serve the defendants.  ECF 69.  Therefore, I anticipated service by September 29, 2025.  Accordingly, I reviewed the Docket on September 30, 2025, to ascertain the status of service.  At that time, I noted that the Clerk had not unsealed the Complaint or my Order (ECF 69), as I had instructed.  The error was promptly corrected on September 30, 2025.  *See* Docket.

Accordingly, by Order of October 1, 2025 (ECF 72),  I required the Relator to effect service upon defendants by November 17, 2025, *i.e.*, within 47 days, or, alternatively, to show cause why the claims against the defendants should not be dismissed, without prejudice.  But, given that the actual unsealing did not occur until September 30, 2025, the time for service was arguably

3

insufficient. Indeed, if the time to serve is calculated from September 30, 2025, the deadline for service would be December 28, 2025. *See* ECF 93 at 4, n.6.

On November 17, 2025, Relator filed proof of service for the following defendants: Ancillary Services, LLP; HHH; the Pediatric Group, LLP (ECF 90); Stanford Joseph Coleman, Jr., M.D. (ECF 91); Kimberly Bresnahan (ECF 92); and Marc E. Weber, M.D. (ECF 89). Their responses to the suit are not yet due. And, no attorney has entered an appearance for these defendants. *See* Docket.

Also on November 17, 2025, Relator filed the Motion concerning service. ECF 93. Relator appended nine exhibits to the Motion. ECF 93-1 to 93-9. These include a Declaration submitted by Relator's Counsel, Monica Miller, setting forth the attempts to serve various defendants. ECF 93-2 (the "Miller Declaration"). Additionally, Relator appended the Declaration of James Chartrand, a process server retained by Relator's counsel. ECF 93-9 (the "Chartrand Declaration").

In the Motion, Relator asserts that he has not obtained service for the following defendants: Jon W. Gonella, P.A.; Robert G. Graw, M.D.; FUC; the Pediatric Group And Families Too!, LLC; and Pediatric Specialists of Annapolis, LLP (the "Unserved Defendants"). ECF 93 at 3–4. Relator also states that the three unserved Entity Defendants have "dissolved", *id.* at 1, and that Graw was the "managing member or partner" of them. *Id.* at 3. I shall refer to the three unserved Entity Defendants collectively as the "Dissolved Entity Defendants."

In addition, Relator asserts that the defendants in this case are "associated with the 'Right Time' chain of urgent care centers." ECF 93 at 2. According to Relator, "[t]he Right Time urgent care business was acquired by Medstar Health in 2020, which now operates substantially all of the former Right Time facilities under the Medstar Urgent Health banner." *Id.* Relator claims that he

4

has given "[n]otice . . . by email and Priority Mail to attorneys for Medstar Health[.]" *Id.* at 4. But, as of Relator's filing, no one associated with MedStar Health has accepted service on behalf of defendants. *See id.*

Relator asks the Court to issue an order, "pursuant to the Court's inherent authority to permit alternative service, as well as Md. Rules [sic] 2-121(c), authorizing, *nunc pro tunc*, alternative service" for Graw, Gonella, and the three Dissolved Entity Defendants. ECF 93 at 1. Alternatively, Relator asks for "an additional 60 days" to serve the Unserved Defendants, *id.*, and for "leave to serve interrogatories on the three active business entity defendants requiring them to cooperate with locating Dr. Graw." *Id.* at 7.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

As to Gonella, I am satisfied that the Relator has established that Gonella has evaded service. Therefore, Relator can accomplish service for Gonella by (again) mailing a copy of the summons, complaint, and all other papers filed with it to Gonella at his last known residence, and by also delivering a copy of the requisite papers to a person of suitable age and discretion at Gonella's place of business. And, for the reasons that follow, I shall grant the Relator until **January 28, 2026**, to serve the Unserved Defendants.

Additionally, I shall grant leave to the Relator to serve five interrogatories on the three corporate defendants that have been served, limited to obtaining information regarding the present whereabouts of Dr. Graw and any and all residential and business addresses associated with him. I shall, however, deny plaintiff's request for alternative service, without prejudice.

## Discussion

### A.

Plaintiff has served three of the six Entity Defendants. According to the Relator, Gonella "is almost certainly deliberately evading service." ECF 93 at 3. Relator acknowledges that Dr.

5

Graw and the three Dissolved Entity Defendants "have *probably*[] not been served" under applicable law, although papers were left with "a responsible adult" at his medical practice. *Id.* at 3 (italics in original); *id.* at 3, n.4.

In support of his Motion, the Relator relies on the Court's inherent authority to permit alternative service as well as the federal and Maryland rules of civil procedure. Fed. R. Civ. P. 4(e)(1) provides that an individual "may be served in a judicial district of the United States" pursuant to the "state law for serving a summons . . . in the state where the district court is located or where service is made[.]"

Maryland Rule 2-121(a) lays out three avenues for service of process:

(1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery–show to whom, date, address of delivery." Service by certified mail under this Rule is complete upon delivery.

Relator points the Court to Maryland Rule 2-121(b), which states:

*Evasion of Service.* When proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the summons, complaint, and all other papers filed with it to the defendant at the defendant's last known residence and delivering a copy of each to a person of suitable age and discretion at the place of business of the defendant.

In addition, Relator relies on Maryland Rule 2-121(c), which provides:

*By Order of Court.* When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded and that service pursuant to section (b) of this Rule is inapplicable or impracticable, the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice.

Maryland Rule 2-124(g) and (h) require that "service" be "made upon" an LLP or LLC's "resident agent." However, if there is "no resident agent or if a good faith attempt to serve the

6

resident agent has failed, service may be made upon any other person expressly or impliedly authorized to receive service of process." Maryland Rule 2-124(g).  As to LLCs, Maryland Rule 2-124(h) allows service to be made on "any member" who is "expressly or impliedly authorized to receive service of process" if service on the resident agent is impossible or has not been accomplished, despite good faith efforts.

"When a plaintiff requests an alternate method of service, the proposed method must satisfy constitutional standards for due process."  *Joe Hand Promotions, Inc. v. Hill*, PX-21-00557, 2021 WL 5015749, at *1 (D. Md. Oct. 28, 2021).  To satisfy the requirements of due process, "notice" must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

### B.

As to Gonella, Relator asserts, as noted, that Gonella is "evading service[.]" ECF 93 at 3. Therefore, Relator argues that allowing more time to serve him will not remedy the issue, because "Defendant Gonella will still be evading service[.]"  *Id.* at 6.

In support of the evasion claim, Relator points out that "Gonella refused to sign for, or collect, a package delivered Certified Mail, Restricted Delivery, even as he received, at precisely the same moment, an identical package sent by Priority Mail but without a signature requirement." *Id.*[2]  Therefore, Relator asks the Court to "deem Defendant Gonella served by Priority Mail,

---

[2] Relator relied on the United States Postal Service ("USPS") to deliver these packages. *See, e.g.,* ECF 93-7 (USPS tracking record for delivery attempt for Gonella).  According to USPS, Restricted Delivery "allows the mailer to direct delivery only to the addressee or the address's authorized agent."  *What is Restricted Delivery,* USPS, https://perma.cc/5LMN-9VQU (last accessed Nov. 18, 2025).  The signature requirement for Priority Mail, on the other hand, can be waived.  *See USPS® Mail Requiring a Signature–Accountable Mail*, USPS, https://perma.cc/3S8Q-U985 (last accessed Nov. 18, 2025).

delivered November 10, 2025, coupled with service by email and Priority Mail upon counsel for Medstar Health, Mr. Gonella's employer." *Id.* at 5.

The evasion claim is supported by the Miller Declaration. ECF 93-2. Miller asserts that she personally attempted service on Gonella at his residence in Kensington, Maryland on November 6, 2025. ECF 93-2, ¶ 26. However, Miller claims that "no one answered the door", even though she could hear a dog barking and "a man's voice speaking to the dog." *Id.*

Then, on November 7, 2025, Miller sent two "package[s]" to Gonella's Kensington, Maryland residence. *Id.,* ¶¶ 15, 27, 28. Miller sent one "package" via "Certified Priority Mail, Restricted delivery[.]" *Id.,* ¶¶ 15, 27. There was a failed attempt to deliver this package on November 10, 2025, but "notice was left for Mr. Gonella that he could arrange for another delivery" or "the package could be collected at a nearby post office." *Id.* ¶ 27. Apparently, this did not occur. Miller sent another "package" via "priority mail (*[i.e.,] not* Restricted Delivery)" and it was delivered to Gonella's Kensington address on November 10, 2025. *Id.,* ¶ 28.

Further, Miller claims that on November 14, 2025, she "again attempted to serve" Gonella at his Kensington residence and "no one answered the door." *Id.,* ¶ 29. During this attempt, Miller again heard a dog barking but no voices from inside the residence. *Id.* She also observed "a package on the stoop addressed to Katherine Gonella, and a SUV parked in the driveway." *Id.* Two days later, on November 16, 2025, Miller made a third unsuccessful attempt to serve Gonella, but "no one answered the door." *Id.,* ¶ 30. Yet, the package delivered to the residence on November 14, 2025, was no longer outside. *Id.* Moreover, two cars were in the driveway and the lights were on in the house. *Id.* And, full leaf bags were on the front lawn. *Id.* Miller also heard "a man speaking" and a dog barking. *Id.*

8

Miller's averments adequately establish evasion by Gonella. Although Gonella has received notice of the suit, in an abundance of caution, I shall require Relator to again provide "service" upon Gonnella "by mailing a copy of the summons, complaint, and all other papers filed with it" to Gonella at his "last known residence and delivering a copy of each to a person of suitable age and discretion at the place of business of the defendant", pursuant to Maryland Rule 2-121(b).

Relator notes that the resident agent for the three active Entity Defendants associated with Dr. Graw is the same person who was "resident agent of the three dissolved entity defendants at the time of their dissolution[.]" *Id.* at 6. Relator has served this resident agent, but it is not clear if this person is still associated with the Dissolved Entity Defendants. *Id.* Moreover, Relator does not claim that service on the former Resident Agent fulfills his service requirements for the Dissolved Entity Defendants. But, Miller asserts that Graw was the managing partner for the Dissolved Entity Defendants. He appears to be an appropriate individual for purposes of service. *See* ECF 93 at 3.

Miller claims that she "performed many database searches to attempt to identify Dr. Graw's residence(s)." ECF 93-2, ¶ 17. Miller identified one address, 2772 Rutland Road in Davidsonville, Maryland, that contains "several contiguous parcels" owned by Graw's family. *Id.* This address is also associated with the medical office, Pediatric Group LLP d/b/a Davidsonville Pediatrics.[3] *Id.* And, on the Davidsonville Pediatrics website, Graw is listed as being "in active practice with

---

[3] In Miller's Declaration, she states: "The 2772 Rutland Road address is the address of one of the two locations of The Pediatric Group LLP d/b/a Donaldsonville Pediatrics." ECF 93-2, ¶ 17. However, throughout the rest of her Declaration, Miller refers to this business as "Davidsonville Pediatrics"[.] *See, e.g., id.,* ¶¶ 21, 23. Additionally, in Chartrand's Declaration he refers to this business as "Davidsonville Pediatrics." ECF 93-9. Therefore, I will assume that Miller's reference to "Donaldsonville Pediatrics" was a typographical error.

that medical group." *Id.* Additionally, Miller found an "Annapolis address owned by a family company" that "certain databases suggest[]" is Graw's "current residence." *Id.*, ¶ 18.

On November 6, 2025, Miller "personally attempted" to serve Graw at the Annapolis address, but "[n]o one answered the door." *Id.* Then, on November 7, 2025, Miller attempted to serve Graw by Certified Mail, Restricted Delivery to the Rutland Road address as well as the Annapolis address. *Id.*, ¶¶ 21, 22. Both delivery attempts "failed and notice was left for Dr. Graw that he could arrange for another delivery, and that, alternatively, the package could be collected at a nearby post office." *Id.* Additionally, on November 7, 2025, Miller sent a package via Priority Mail (*i.e., not* Restricted Delivery) to both the Rutland Road address and the Annapolis address. *Id.,* ¶¶ 23, 24. Delivery was made at both addresses on November 8, 2025. *Id.*

Also on November 7, 2025, Miller retained James Chartrand to serve Graw. *Id.*, ¶ 19. In Chartrand's Declaration, he avers that Realtor's counsel gave him "the summons and complaint" on November 7, 2025. ECF 93-9. Relator's counsel also provided Chartrand with two possible addresses for Dr. Graw: the Rutland Road address and the residential address in Annapolis. *Id.* Chartrand attempted to serve Graw on November 13 and 14, 2025, at Davidsonville Pediatrics, located at 2772 Rutland Road, Davidson [sic], Maryland.[4] *Id.* Although the medical office was open during both attempts, Chartrand was "told on both occasions that Dr. Graw was not there." *Id.* Chartrand states: "On the first visit I was told that he was 'out of state,' but the staff would not provide an address. On the second visit, I left the papers at the reception desk." *Id.* Curiously, Chartrand "did not attempt to serve Dr. Graw" at the residential address in Annapolis. *Id.*

Chartrand was apparently told by people associated with Davidsonville Pediatrics that Graw was out of the state. However, it does not appear that Chartrand made any effort to

---

[4] Presumably, Chartrand meant Davidsonville.

10

substantiate this claim and instead took the representatives of Davidsonville Pediatrics at their word. Moreover, he never attempted service of Dr. Graw at the Annapolis address. I cannot conclude from the facts presented that Chartrand adequately attempted to serve Graw or that Graw is evading service.

Therefore, at this time, I decline to grant Relator's request for alternative service as to Dr. Graw and the Dissolved Entities, but without prejudice to Relator's right to renew the request, if warranted. In addition, I shall grant Relator until **January 28, 2026**, to serve Dr. Graw and the three Dissolved Entity Defendants.

As noted, the Relator has established that Gonella is evading service. Therefore, by **January 28, 2026**, Relator shall mail a copy of the summons, complaint, and all other papers filed with it to Gonella, at his last known residence, and deliver a copy of the required papers to a person of suitable age and discretion at the place of business of Gonella, pursuant to Maryland Rule 2-121(b). Delivery of the requisite documents to Gonella's place of business must be made pursuant to Maryland Rule 2-121(a), *i.e.,* by delivering the required documents to a person of suitable age and discretion at Gonella's place of business or by mailing such a person the required documents by Certified Mail, Restricted Delivery.

Further, I will allow Relator to serve five interrogatories on each of the three active Entity Defendants (Ancillary Services, LLP, HHH, and the Pediatric Group, LLP). *See* ECF 93 at 7.[5] The content of these interrogatories shall be limited to obtaining information about the present

---

[5] Fed. R. Civ. P. 33(b)(1)(a) dictates than "the party to whom" the interrogatory is "directed" must answer it. Fed. R. Civ. P. 33(b)(1)(b) states that if the responding party "is a public or private corporation, a partnership, [or] an association," an interrogatory "must be answered" by "any officer or agent, who must furnish the information available to the party." "[C]ompanies have broad discretion in selecting an agent to verify its interrogatories[.]" *Est. of Boyles v. Gree USA, Inc.*, CCE-20-276, 2021 WL 3292727, at *4 (M.D.N.C. Aug. 2, 2021).

11

whereabouts of Dr. Graw and his residential and business addresses, for purposes of service upon him.

    An Order follows.

Date:  November 20, 2025                 /s/
                                               Ellen Lipton Hollander
                                               United States District Judge